UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FINOVA CAPITAL CORPORATION,

        Appellant,

v.                                               Case No. 8:04-cv-2797-T-24TBM

FLMI, INC. d/b/a KURTZ PHARMACY
and FRANK BYERLY,

        Appellees.
_____/

## ORDER

This cause comes before the Court on an appeal from the United States Bankruptcy Court for the Middle District of Florida. Appellant, Finova Capital Corporation ("Finova"), filed a Brief and Reply Brief (Doc. Nos. 10 and 37) and Appellees, FLMI, Inc. d/b/a Kurtz Pharmacy ("FLMI") and Frank Byerly ("Byerly"), filed a Brief in Response (Doc. No. 33).

**I.**      **Standard of Review**

This Court independently reviews the bankruptcy court's decision. See In re Bush, 62 F.3d 1319, 1322 (11th Cir. 1995). The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review, and the bankruptcy court's conclusions of law are reviewed *de novo*. See id.; In re Financial Federated Title & Trust, Inc., 309 F.3d 1325, 1328-29 (11th Cir. 2002).

**II.**      **Background**

Various Recomm entities[1] operated a nationwide network of electronic message boards

---

[1] Optical Technologies, Inc., Recomm Operations, Inc., Recomm Enterprises, Inc., Recomm International Display Corp., Inc., Automated Travel Center, Inc., Recomm

and kiosks that they marketed and distributed primarily to pharmacists and veterinarians, including Appellees. Finova Capitol Corporation ("Finova") was one of many finance companies who provided lease financing for the leasing of the boards and kiosks marketed by Recomm International Display, Ltd. ("Recomm").

On January 27, 1995, FLMI, Inc. d/b/a Kurtz Pharmacy ("FLMI") entered into a four year Lease Agreement, with Recomm as the listed Vendor, for the use of certain equipment, described as a Recomm Vox Apothecary System. Frank Byerly ("Byerly") executed the personal guaranty section of the Lease Agreement. (AP[2] Doc. No. 70, Exhs. 1 and 5). The Lease Agreement provided that FLMI would pay the Lessor $316.09 per month for a term of forty-eight months. At the time Byerly executed the Lease Agreement, the section entitled "Accepted: Lessor" was blank. (AP Doc. No. 70, Exh. 5). Finova, who is the Lessor, did not execute the Lease Agreement until February 10, 1995. (AP Doc. No. 70, Exh. 1).

The Lease Agreement provided the following: (1) **"NO MODIFICATION TO THIS LEASE WILL BE EFFECTIVE UNLESS MADE IN WRITING AND SIGNED BY BOTH PARTIES,"** and (2) "Non-Cancellable Lease: This lease cannot be cancelled by you;" and (3) "This lease contains the entire agreement between you and us and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed both by you and us." (AP Doc No. 70, Exh. 1). On January 27, 1995, Appellees also executed a document addressed "TO: Recomm's Designated Leasing Company" which acknowledged that the

---

International Display Corporation, Recomm International Display, Ltd., and Recomm International Corporation (collectively "Debtors").

[2]Adversary Proceeding.

attached:

> Lease is non-cancellable for the term and that the payments under the Lease are due absolutely and unconditionally regardless of any representation and warranty, whether verbal or in writing, made by any party, other than the written representation and warranty of the Lessor under the Lease.

(AP Doc. No. 70, Exh. 4). In his deposition, Byerly states that he did not read the Lease Agreement or letter to the designated leasing company prior to executing the documents. (AP Doc. No. 70, Exh. 28 - Byerly Depo, pp. 30, 32 - 33 and 36).

Also on January 27, 1995, FLMI and Recomm entered into an Advertising Agreement whereby Recomm agreed to pay a licensing fee to FLMI of $270 per month for a term of forty-eight months for the right to place advertising on the leased equipment. (AP Doc. N0. 70, Exh. 2). The Advertising Agreement states that it could be modified only by a written instrument signed by Recomm. (AP Doc. No. 70, Exh. 2, ¶7). In his affidavit Byerly claims that he did not read the Advertising Agreement prior to executing it. (AP Doc. No. 70, Exh. 16, ¶¶27, 28 and 30). Finova was not a party to the Advertising Agreement.

FLMI made at least eight payments under the Lease Agreement, each in the amount of $316.09, to "Finova Manufacturing & Dealer Services," a Finova related entity, for invoices dated March 21, 1995 through October 20, 1995. (AP Doc. No. 70, Exh. 6). On September 5, 1995, Recomm sent a letter to its customers, including FLMI, regarding Recomm's failure to make payments, or late payment of, advertising licensing fees. (AP Doc. No. 70, Exh. 7). By October 1995, Recomm owed at least $1,620.00 in advertising licensing fees to Appellees. (AP Doc. No. 70, Exh. 28 - Byerly Depo., p. 70).

In his affidavit, Byerly states he returned the equipment to Recomm in early December of 1995. (AP Doc. No. 70, Exh. 16, ¶18). There is no evidence in the record that Recomm actually

received the equipment, and Byerly mailed the equipment back without obtaining any postal record or receipt.  (AP Doc. No. 51, pp. 96 and 98).   In addition, there is no written document from Recomm terminating the Advertising Agreement.  (AP Doc. No. 51, p. 120).

On December 27, 1995, Finova sent a letter to FLMI regarding past due lease payments in the amount of $316.09.   The letter is signed by Jim Filiatrault ("Filiatrault"), Collection Department.  (AP Doc. No. 70, Exh. 9).  Sometime after the receipt of the letter, Byerly wrote on his copy of the letter "Recomm Int. Display 7650 Courtney Campbell Causeway, Suite 1050, Tampa FL sent back 12/8/95 called 1/4/96 told sent back."  There is an arrow indicating that Byerly had called Filiatrault.  (AP Doc. No. 70, Exh. 9).

Finova's internal computer generated records indicate that Byerly had several communications with Finova in January 1996 regarding the status of his account.  These same records indicate that during a conversation on or about October 19, 1998, Byerly advised Finova that he had returned the equipment "a few years back" and that "to him the matter is settled." Finova advised Byerly that it considered the account an active debt.  (AP Doc. No. 70, Exh. 48). Finova then continued efforts to collect on the debt. (AP Doc. No. 70, Exhs. 9, 14, 17 - 20, and 47 - 48).  The Lease Agreement was never modified, altered, or terminated in writing by Finova. (AP Doc. NO. 70, Exh. 28, pp. 50 -51 and Exh. 30, ¶1).

In January 1996, some of the Recomm entities filed for bankruptcy under Chapter 11.[3] Recomm listed FLMI as an unsecured creditor on their Schedules and Statement of Financial Affairs by virtue of the Advertising Agreement FLMI had with Recomm.  (AP Doc. No. 70, Exh.

---

[3]Ultimately, all the Recomm entities filed for bankruptcy protection and these cases were substantially consolidated on April 30, 1998 (collectively "the Recomm Bankruptcy Cases").

49). In January of 1998, a Fourth Amended Plan of Reorganization ("Fourth Amended Plan") was filed with the bankruptcy court, and a Summary of the Fourth Amended Plan and an order informing Appellees of the date of the confirmation hearing was served on Appellees in April of 1998.[4]

The Fourth Amended Plan did not identify Appellees by name, but stated, the provisions at issue in the Fourth Amended Plan applied to "Participating Lessees." A Participating Lessee is defined in the Fourth Amended Plan as a Lessee[5] who is a party to a Lease[6] with a Participating Lessor, excluding those Lessees whose rights and obligations under a Lease have been conclusively determined prior to the confirmation date pursuant to a final order, judgment, or binding agreement between such Lessee and its Lessor.[7] A "Participating Lessor" is defined in the Fourth Amended Plan as an entity who, among other things, is identified in Exhibit B to the Fourth Amended Plan as a Participating Lessor. Finova is the first Participating Lessor listed in Exhibit B.

The three provisions in the Fourth Amended Plan and Confirmation Order applicable to

---

[4]See Certificate of Service for the Summary of the Fourth Amended Plan, attached to Finova's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment (AP Doc. No. 9) and (AP Doc. No. 70, Exh. 25). A certificate of service raises a presumption of valid service. See In re Northeast Office and Commercial Properties, Inc., 178 B.R. 915, 918 n.1 (D. Mass. 1995); In re Brenesell, 109 B.R. 412, 418 (D.Hawaii 1989)(citations omitted).

[5]A "Lessee" is defined in the Fourth Amended Plan as a person who leased from Lessors the boards and kiosks that Lessors obtained from the Debtors.

[6]A "Lease" is defined in the Fourth Amended Plan as the lease agreements whereby Lessors leased to Lessees the boards and kiosks that the Lessors purchased from the Debtors.

[7]Appellees admit that their rights and obligations under the Lease Agreement were not conclusively determined prior to the Confirmation Date pursuant to a Final Order, judgment, or binding agreement between Appellees and Finova. (AP Doc. No. 70, Exh. 28 - Byerly Depo., pp. 50-51 and 59 - 60; Exh. 30, ¶1 and Exh. 31, ¶¶9 and 11).

the present case are the lease modification provision, the waiver and release provision, and the injunction provision. The Fourth Amended Plan purported to modify the lease between Finova and Appellees by reducing the amount owed under the lease. The Fourth Amended Plan set out a specific formula for determining the new amount owed under each lease. (AP Doc. No. 70, Exh. 22, pp. 20-22).

Additionally, the Fourth Amended Plan contained a Waiver and Release provision. (AP Doc. No. 70, Exh. 22, pp. 48-50). In this provision, the Fourth Amended Plan provided that "each of the Lessees agrees to release any . . . claims . . . [and] defenses . . . against the Released Lessor Parties with respect to the revised Leases resulting or arising out of actions, activities, or events occurring prior to the Confirmation Date."[8] The Fourth Amended Plan further provided that "each of the Participating Lessors shall be deemed to . . . release the Participating Lessees . . . from any and all . . . claims . . . [and] defenses . . . which any of them ever had . . . against any of the Released Lessee Parties . . . arising from the beginning of the world to the Confirmation Date."[9] (AP Doc. No 70, Exh. 22, pp. 49-50).

The Fourth Amended Plan and Confirmation Order also contained an injunction provision. The Fourth Amended Plan provided that "all Lessees shall be permanently enjoined from asserting against the Released Lessor Parties . . . any . . . claims or causes of action based upon any act or omission . . . that occurred prior to the Effective Date" of the Fourth Amended Plan.[10] (AP Doc. No. 22, p. 53).

---

[8] See also AP Doc. No. 70, Exh. 23, p.19.

[9] See also AP Doc. No. 70, Exh. 23, pp. 19-20.

[10] See also AP Doc. No. 70, Exh. 23, p. 23.

On May 13, 1998, the bankruptcy court issued an order confirming the Fourth Amended Plan ("Confirmation Order"). The Fourth Amended Plan became effective on June 30, 1998 ("Effective Date"). In its Confirmation Order, the bankruptcy court determined that it had jurisdiction over all matters, including the release and injunction provisions in the Fourth Amended Plan; (AP Doc. No. 70, Exh. 23, ¶62) it could issue the releases and injunction pursuant to 11 U.S.C. § 105, since they were necessary and appropriate in order to carry out the provisions of the Fourth Amended Plan, and they were not prohibited by 11 U.S.C. § 524(e); (AP Doc. No. 70, Exh. 23, ¶¶63 and 65) and the facts and circumstances of the Recomm Bankruptcy Cases warranted the issuance of the injunction and release of third parties. (Doc. No. 70, Exh. 23, ¶66).

In its Confirmation Order, the bankruptcy court ordered, among other things, the following: the Lessees shall release the Participating Lessors from all claims and defenses, including those with respect to actions or events that occurred prior to the confirmation date; (AP Doc. No. 70, Exh. 23, p. 18 ¶16); the leases as modified are valid and binding between the Released Lessor Parties and Participating Lessees; (AP Doc. No. 70, Exh. 23, p. 18 ¶16); the Participating Lessors shall be deemed to have released the Participating Lessees from all claims and defenses that arose prior to the effective date of the Confirmation Order; (AP Doc. No. 70, Exh. 23, p. 19 ¶17); the Lessees are enjoined from asserting against the Released Lessors all claims and causes of actions based on any action that occurred prior to the effective date of the Confirmation Order; (AP Doc. No. 70, Exh. 23, p.23 ¶22); and the releases and injunctions are effective regardless of whether a proof of claim was filed. (AP Doc. No. 70, Exh. 23, p. 23 ¶23).

After the Effective Date of the Confirmation Order, Appellees failed to pay Finova the

new amounts due under their lease, and Finova initiated a collection action in the Court of Common Pleas of Lancaster County, Commonwealth of Pennsylvania (Case No. CI 02-02929)( the "Pennsylvania Action"). In response to the collection action, Appellees asserted several affirmative defenses.[11] Appellees' affirmative defenses relate to time, conduct, or events that occurred prior to June 30, 1998, the Effective Date of the Confirmation Order, and challenge the jurisdiction of the bankruptcy court over Appellees. (AP Doc. No. 42).

Finova then filed an adversary proceeding against Appellees in the bankruptcy court seeking a declaration from that court that Appellees are barred and enjoined by the Confirmation Order from asserting their claims and defenses as to the validity and enforceability of the modified lease.[12]

On June 29, 2004, a final evidentiary hearing ("Final Evidentiary Hearing") was held in the bankruptcy court on whether Appellees were bound by the Confirmation Order. Specifically, the issues were:

  A. Whether or not Appellees effectively terminated any legal relationship between Appellees and Finova prior to the date on which the bankruptcy case was commenced thereby excluding the Appellees from the definition of "Participating Lessee," and

  B. Whether or not Appellees were creditors of any of the Recomm entities.

On September 24, 2004, the bankruptcy court entered its Findings of Fact, Conclusions

---

[11]The affirmative defenses relate to alleged misrepresentations and/or fraud by Recomm.

[12]<u>Finova Capital Corporation v. FLMI, Inc. d/b/a Kurtz Pharmacy and Frank Byerly</u>, Adversary Case No. 02-625 in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

of Law and Memorandum Opinion. (AP Doc. No. 62). On September 29, 2004, the bankruptcy court entered a Final Judgment in favor of FLMI and Byerly and against Finova. (AP Doc. No. 64). Thereafter, Finova filed the instant appeal.

### III. Discussion

#### A. Bankruptcy Order Being Appealed

In its Findings of Fact, Conclusions of Law and Memorandum Opinion (AP Doc. No. 62), the bankruptcy court found that Appellees had returned the equipment to Recomm prior to Recomm's filing the Chapter 11 bankruptcy case on February 11, 1998. The bankruptcy court also found there was "no record evidence that supports Finova's position that Recomm did not consider the agreement with [Appellees] terminated." The bankruptcy court then granted final judgment in favor of Appellees, finding Appellees had terminated the Advertising Agreement prior to Recomm's filing for bankruptcy[13], and therefore, the Appellees were not creditors of Recomm and could not be bound by the Confirmation Order.

#### B. Finova's Arguments on Appeal

Finova contends that the bankruptcy court erred in finding that Appellees were not creditors of Recomm. Specifically, Finova argues that Appellees have a claim against Recomm under the Bankruptcy Code and that Appellees cannot unilaterally decide that they are not creditors of Recomm. This Court agrees with Finova's arguments and finds that the bankruptcy court erred in its determination that Appellees were not creditors of Recomm and could not be bound by the Confirmation Plan and Order.

---

[13]The bankruptcy court also found that Appellees' return of the equipment to Recomm did not extinguish their liability to Finova but that the statute of limitations had expired for Finova to collect upon the original debt. (AP Doc. No. 62).

9

### 1. Appellees Are Creditors of Recomm

The sole issue before this Court is whether Appellees were creditors of Recomm at the time of the Recomm Bankruptcy Cases and not, as Appellees contend, whether Recomm fraudulently induced them into entering into the Lease Agreement.[14] The Bankruptcy Code defines the term creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Greer v. O'Dell, 305 F.3d 1297, 1302 (11th Cir. 2002) (quoting 11 U.S.C. §101 (10)(A)). Therefore, to be a creditor, Appellees had to have had a claim against Recomm that arose before or at the time Recomm filed its bankruptcy petition. The Bankruptcy Code's definition of what constitutes a claim is expansive. See Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990). The Bankruptcy Code provides the following definition of a "claim":

> (A)   right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B)   right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. §101(5); see also Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.), 58 F.3d 1573, 1576 (11th Cir. 1995).

---

[14]Appellees contend that the agreements are void *ab initio* under Pennsylvania Law (AP Doc. No. 51, pp. 20, 69-77, 80, 83, 89, 100 - 01) and (Doc. No. 33). However, the bankruptcy court's Findings of Fact, Conclusions of Law and Memorandum Opinion (AP Doc. No. 62) did not reach Appellees' theories. Furthermore, Appellees concede that during the Final Evidentiary Hearing the bankruptcy court expressed doubt that "he would have ruled in Mr. Byerly's favor based upon the alleged fraud." (Doc. No. 33).

The overriding policy goal of the Bankruptcy Code is to provide debtors with a fresh start.  See F.C.C. v. NextWave Personal Communications Inc., 537 U.S. 293, 305 (2003); see also In re Cox, 338 F.3d 1238, 1242 (11th Cir. 2003).  Pursuant to this goal, all potential claims against the debtor "'and legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" Epstein, 58 F.3d at 1576 (quoting H.R. Rep. 595, 95th Cong., 2d Sess. 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5964, 6266).  The Eleventh Circuit has recognized that Congress intended to adopt the broadest available definition of claim to allow bankruptcy courts to provide the broadest relief.  See Greer, 305 F.3d at 1302 (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)); see also In re Wilbur, 237 B.R. 203, 207- 08 (Bankr. M.D. Fla. 1999)(citing Epstein, 58 F.3d at 1577).

Importantly, the existence of a potential action against a debtor on or about the time of the petition filing is sufficient to create a claim under the Bankruptcy Code.  See In re Holstein, 299 B.R. 211, 224 (N.D. Ill. 2003).  Here there was a contractual relationship between Appellees and Recomm, i.e., the Advertising Agreement.  When Appellees returned the equipment to Recomm, Byerly wrote and enclosed  "a little note saying consider this agreement terminated due to fraud."[15] (AP Doc. No. 51, p. 89).  Irrespective of the merit of Appellees' claim of fraud against Recomm, or whether Appellees acted on their claim subsequent to the filing of the Recomm Bankruptcy Cases, the language contained in this note evidences that Appellees had a claim against Recomm under 11 U.S.C. §101(5) of the Bankruptcy Code.  A claim for fraud need not even be fully developed to constitute a claim under federal bankruptcy law.  See In re Amfesco Industries, 81 B.R. 777, 781 (Bankr. E.D. NY 1988).

---

[15]Appellees apparently did not make or retain a copy of this note.

Additionally, at the time that Byerly returned the equipment, Recomm already owed Appellees at least $1,620.00 in advertising licensing fee payments. (AP Doc. No. 70, Exh. 28 - Byerly Depo., p. 70). As discussed in greater detail below, Recomm believed Appellees were creditors and listed them as having claims of $11,800.00 which represents the total amount due to Appellees from Recomm under the Advertising Agreement. (AP Doc. No. 70, Exh. 49). Under the facts of this case, and in light of the Bankruptcy Code's expansive definition of what constitutes a claim, Appellees had a claim against Recomm that arose before Recomm filed its bankruptcy petition, and therefore, Appellees are creditors of Recomm.

### 2. The Creditor Relationship Was Not Terminated by Appellee's Unilateral Conduct

Appellees' unilateral conduct, namely Byerly's return of the equipment to Recomm, is not sufficient to terminate the legal relationship between Appellees, Finova, and Recomm. Under the facts of the case, Appellees cannot unilaterally decide that they are not creditors.

In finding that Appellees were not creditors of Recomm, the bankruptcy court viewed Appellees' unilateral return of the equipment to Recomm as a sort of "reverse" accord and satisfaction.[16] Specifically, the bankruptcy court stated that an accord and satisfaction occurred since Appellees, "the party who are *owed* the money from Recomm, returned the equipment and

---

[16]Since the bankruptcy court did not cite case law in support of its holdings, it is unclear to this Court to what extent the bankruptcy court considered whether Appellees waived their claim under the bankruptcy code. However, to the extent that Appellees contend that their claim under the Bankruptcy Code was waived, this Court finds that the contention is without merit since under either Pennsylvania or Florida law, there is insufficient evidence that Appellees's conduct in returning the equipment to Recomm was a clear relinquishment of their claim under the Bankruptcy Code against Recomm. See RCN Telecom Services of Philadelphia, Inc. v. Newtown Tp., Bucks County, 848 A.2d 1108, 1113 (Pa. Cmmw. Ct. 2004); see also Costello v. The Curtis Bldg. Partnership, 864 So.2d 1241, 1244 (Fla. 5th DCA 2004); Matter of Garfinkle, 672 F.2d 1340, 1347 (11th Cir. 1982).

deemed the debt that Recomm owes" satisfied.  (AP Doc. No. 62).

Generally speaking, "the elements of an accord and satisfaction are: (1) a proper subject matter; (2) competent parties; (3) mutuality of assent; and (4) consideration."  See 29  Richard A. Lord, Williston on Contracts §73:29 (4th ed.).  The required elements of an accord and satisfaction are similar under both Pennsylvania and Florida law.[17]  See Brunswick Corp. v. Levin, 276 A.2d 532, 533 - 34 (Pa. 1971); Pogge v. Dep't of Revenue, 703 So.2d 523, 526 (Fla. 1st DCA 1997).  Here, there was no mutuality of assent or "meeting of the minds" between Appellees and Recomm with respect to the effect of Appellees' unilateral return of the equipment to Recomm.  Although Appellees might have considered the Advertising Agreement and Lease Agreements terminated, Recomm did not.

Assuming the equipment was returned, there is still no evidence in the record to suggest that in accepting the equipment,  Recomm understood that Appellees deemed the payments owed by Recomm to Appellees under the Advertising Agreement satisfied.  There is no evidence in the record of a written document from Recomm terminating the Advertising Agreement as required under terms of the Advertising Agreement.  Furthermore, it is clear that Recomm did not consider the Advertising Agreement with Appellees terminated.  Recomm continued to send advertising disks and correspondence to Appellees through In-Store Promotions, Inc., a company approved by the bankruptcy court to manage Recomm's business during the bankruptcy proceedings.  (AP Doc. No. 70, Exh. 43).  Additionally, Recomm listed Appellees as unsecured

---

[17]The Court notes that in their briefs, Finova and Appellees cite to both Pennsylvania and Florida law with respect to the elements of waiver and accord and satisfaction without briefing or advising this Court with respect to which law, Florida or Pennsylvania, applies to the Advertising Agreement.  The Advertising Agreement did not contain a choice of law provision.

creditors in the bankruptcy proceeding. There cannot be an accord and satisfaction when, subsequent to the alleged receipt of the equipment, Recomm lists FLMI as an unsecured creditor having a disputed claim of $11,880.00.

## V. Conclusion

For the reasons stated above, this Court finds that Appellees are creditors of Recomm. Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Appellant's Amended Request for Oral Argument (Doc. No. 36) is **DENIED**.

(2) The decision of the bankruptcy court granting final judgment in favor of Appellees is **REVERSED**.

(3) The case is **REMANDED** to the bankruptcy court with instructions to vacate its Findings of Fact, Conclusions of Law and Memorandum Opinion and final judgment entered thereon in light of this Court having determined that Appellees are creditors of Recomm.

(4) The Clerk is directed to **CLOSE** the case and terminate any pending motions.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of September, 2005.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
The Honorable Alexander L. Paskay